UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLOTTE FREEMAN | CIVIL ACTION |
| VERSUS | NO. 22-5546 |
| OCEAN HARBOR CASUALTY INSURANCE COMPANY | SECTION "B"(3) |

## ORDER AND REASONS

Before the Court are plaintiff Charlotte Freeman's motion for partial summary judgment on bad faith claims (Rec. Doc. 76) and defendant Ocean Harbor Casualty Insurance's opposition to plaintiff's motion for partial summary judgment (Rec. Doc. 79). For the following reasons,

IT IS ORDERED that plaintiff Charlotte Freeman's motion for partial summary judgment on bad faith claims (Rec. Doc. 76) is DENIED as to the plaintiff's bad faith claims related to Ocean Harbor delayed insurance payments for reasons *infra*.

IT IS FURTHER ORDERED that plaintiff's bad claims for penalties and attorney fees pursuant to La. R.S. §22:1892 and §22:1973 are DISMISSED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This federal diversity jurisdiction 28 U.S.C. § 1332 claim arises from a dispute between plaintiff Charlotte Freeman against her insurer, defendant Ocean Harbor Casualty Insurance Company, regarding Hurricane Ida damage. After Ocean Harbor's initial coverage determination of $18,382.00, Freeman contracted an independent adjuster, who monetized the damage at $314,668.18. Rec. Doc. 20 at 2–3 ¶¶ 8, 10 (second amended complaint). According to Freeman, "Ocean Harbor received Plaintiff's estimates on or about July 29, 2022, but has made no offer to settle Plaintiff's claim." *Id.* at 3 ¶ 10. Thus, Freeman alleges breach of insurance contract and violations of the duties of good faith and fair dealing against Ocean Harbor. *Id.* at 3–4 ¶¶ 12–15.

1

With leave of the court, Freeman amended her complaint to add allegations related to her relationship with American Veteran's Restoration ("**AVR**"), which performed mitigation work on her property. *See id.* at 5 ¶¶ 17–19. Due to the allegedly satisfactory proof Ocean Harbor received from AVR, Freeman contends Ocean Harbor is liable "for any indemnity and all amounts that she could or would be found liable unto AVR, including any amounts of an award of damages, interest, penalties, late fees, attorney fees and all other costs of litigation." *Id.* at 5 ¶ 18. According to Freeman, Ocean Harbor "unreasonably withheld an accurate and defensible accounting of the full extent of the damages caused by the storms." *Id.* at 5 ¶ 19.

Ocean Harbor previously moved for summary judgment as to claims related to personal property and contents, additional living expenses, and depreciation recovery. Rec. Doc. 35. This Court denied the defendant's motions without prejudice, allowing it tor re-urge its contentions when appropriate. Rec. Doc. 44 at 1. Defendant's summary judgment motion (Rec. Doc. 75), again, moves for summary judgment as to claims related to personal property, additional living expenses, and depreciation recovery. Whereas the plaintiff Charlotte Freeman's instant motion for partial summary judgment regards bad faith claims. *See* Rec. Doc. 76.

**LAW AND ANALYSIS**

### A. Motion for Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). However, even if not accompanied by an affidavit, material in support or opposition of a motion for summary judgment may be considered as long as it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR*

*Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

However, where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

**B.  Scheduling Modifications**

Pursuant to the Federal Rules of Civil Procedure, "[a] scheduling may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To show good cause, the party seeking to modify the scheduling order has the burden of showing 'that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (citing *Filgueira v. US Bank Nat'l*

*Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013)). Additionally, the Fifth Circuit Court of Appeals considers four factors in determining whether to allow modification of a scheduling order: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Meaux Surface Prot., inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)).

The final pretrial conference and trial in this matter was set for March 27, 2025, and April 14, 2025, respectively. *See* Rec. Doc. 54.  The Court entered its scheduling order on July 30, 2024. *Id.* the deadline for plaintiffs to file "all case-dispositive pre-trial motions . . . shall be filed and served in sufficient time to permit hearing thereon no later than February 19, 2025." *Id.* at 1. As clearly stated in the scheduling order, "[a]ny motions filed in violation of this order shall be deemed waived unless good cause is shown." *Id.* On February 5, 2025, plaintiff filed the instant motion. Rec. Doc. 76.  In the Eastern District of Louisiana, "motions must be filed [no] later than the fifteenth day preceding the date assigned for submission and actual notice of the submission date must be given to opposing counsel at least fifteen days before the submission date, regardless of which FRCP 5(b) service method is used." LR. 7.2.

In defendant's response to plaintiff's untimely motion (Rec. Doc. 79), defendant asserts that plaintiff's motion cannot be heard or submitted by the scheduling date due to it being untimely. Rec. Doc 79 at 1. Being that the plaintiff's motion was filed fourteen days before the last possible submission date, the defendant is correct. Furthermore, plaintiff has offered no good cause for why the motion should be heard despite being filed untimely. However, because the defendant did submit a response to the instant motion, this Court has chosen to allow the submission despite the plaintiff's untimeliness. Nonetheless, as this has not been plaintiff's only untimely filing in this

matter[1], this Court warns plaintiff that future untimely filings may result in sanctions.

### C. Governing Law—Louisiana Substantive Law

The Fifth Circuit has interpreted the United States Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), to "require[] that federal courts apply substantive state law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)). Here, jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. *See* Rec. Doc. 1 at 1. As such, the Court must apply substantive state law. *See Cates*, 928 F. 2d at 687. Both parties seemingly concede that Louisiana substantive law should apply in the instant matter. *See* Rec. Docs. 76 and 79.

To determine Louisiana law, courts look to decisions by the Louisiana Supreme Court. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Absent guidance, they must determine "how [the Louisiana Supreme Court] would resolve the issue if presented with the same case." *Id.* To do so, courts "must employ Louisiana's civilian methodology, whereby [they] first examine primary sources of law: the constitution, codes, and statutes." *Id.* Additionally, courts must also consider that in Louisiana's civilian system jurisprudence and existing caselaw are considered a secondary law source, thus not strictly binding on this Court.

### D. Louisiana Bad Faith Statutes

The Court has reviewed the record and has determined the following facts. The parties agree that Freeman reported her Hurricane Ida claim to Ocean Harbor on September 20, 2021. Rec. Doc. 76-8 at 1; Rec. Doc. 79-1 at 1. Further, the parties agree that Ocean Harbor first inspected

---

[1] Previously, the plaintiff's submitted their response (Rec. Doc. 82) to the defendant's motions (Rec. Doc. 75) untimely, leaving defendant no time to reply. Upon this Court striking the untimely response, plaintiff then filed a motion for reconsideration and leave to file her response (Rec. Doc. 88) on March 3, 2025, five (5) days after this Courts Order (Rec. Doc. 85) and twenty (20) days past the original filing deadline.

Freeman's home on September 22, 2021. *Id.* Per the plaintiff, upon receipt of the initial inspection, Ocean Harbor issued a timely payment on November 10, 2021, in the amount of $18,382.00. Rec. Doc. 76-1. It is uncontested that Ocean Harbor later received a water mitigation estimate from AVR, on or about, November 18, 2021. Rec. Doc. 76-8 at 1; Rec. Doc. 79-1 at 1. Ocean Harbor avers and remains unrebutted that upon receipt of AVR's estimate, plaintiff's home had already undergone "repairs" by AVR. Rec. Doc. 79-1. Additionally, both parties acknowledge that following AVR's "repairs" Ocean Harbor conducted their second inspection on November 18, 2021. Rec. Doc. 76-8 at 2; Rec. Doc. 79-1 at 2. Finally, both parties agree that on March 10, 2022, Ocean Harbor issued another payment to Freeman in the amount of $84,976.00. *Id.*

The disagreement between the parties arises over whether the second payment made three months after the November inspection was untimely or in bad faith. Ocean Harbor states that the second inspection report and undisputed payment recommendation was provided from their adjustor on March 2, 2022. Rec. Doc. 79 at 3. Plaintiff argues that this delayed report submission was due to the inspector Ocean Harbor hired. Rec. Doc. 76-1 at 8. Conversely, Ocean Harbor argues that the second report was delayed due to AVR's failure to provide the necessary information regarding their work, estimate, and performance on Freeman's home. Rec. Doc. 79-1 at 2; Rec. Doc. 79 at 3.

Louisiana Revised Statute § 22:1973 provides that "[a]n insurer . . . owes to his insured a duty of good faith and fair dealing." LA. STAT. ANN. § 22:1973 (2024). An insurer may breach this statute by failing to pay a claim within sixty days after receipt of satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause. LA. STAT. ANN. § 22:1973(B)(5) (2024). "To recover statutory penalties, the plaintiff must establish three elements: (i) that the insurer received a satisfactory proof of loss; (ii) that the insurer failed to pay the claim within the

applicable statutory period; and (iii) that the insurer's failure to pay was arbitrary and capricious."
*Armond v. Foremost Insurance Co. Grand Rapids Michigan*, No. 22-4291, 2024 WL 5047502
(W.D. La. Dec. 9, 2024) (*see Grilletta v. Lexington Ins. Co.*,558 F.3d 359, 368 (5th Cir. 2009);
*quoting Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 386 (5th Cir. 1991)).

Additionally, Louisiana Revised Statute § 22:1892 requires insurers to "pay the amount of
any claim due any insured within thirty days after receipt of satisfactory proof of loss from the
insured or any party in interest." LA. STAT. ANN. § 22:1892 (2024); *see also Guillory v. Lee*, 2009-
0075 (La. 6/26/09), 16 So.3d 1104, 1126. If insurer is found to withhold payment "arbitrar[ily],
capricious[ly], or without probable cause" the insured will prevail under § 22:1892. *Id.* Penalties
for failure to pay a legitimate claim in a timely manner include the amount loss, "fifty percent
damages on the amount found to be due . . . as well as reasonable attorney fees and costs." LA.
STAT. ANN. § 22:1892 (2024). Thus, Freeman must show that 1) Ocean Harbor has received
satisfactory proof of loss; (ii) Ocean Harbor failed to tender payment within thirty days of receipt
thereof, and (iii) Ocean Harbor's failure is arbitrary, capricious, or without probable cause.
*Guillory*, 2009-0075 (La. 6/26/09).

"The purpose of these penalty statutes is to 'provide remedies to insureds whose insurance
claims are improperly handled or to whom payment is unreasonably delayed.'" *Bourg v. Safeway
Ins. Co. of La.*, 2019-0270, p. 11 (La. App. 1 Cir. 3/5/20), 300 So. 3d 881, 888 (quotation omitted).
Thus, to recover damages, fees, and costs, both statutes require the insured to prove their insurer
acted arbitrarily, capriciously, or without probable cause in handling the insured's claim. Louisiana
Supreme Court has equated "the phrase arbitrary, capricious, or without probable cause is
synonymous with vexatious, and a vexatious refusal to pay means unjustified, without reasonable

or probable cause or excuse." *See, First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417 (5th Cir. 2024) (quotations omitted); *accord, e.g.*, *Armond*, 2024 WL 5047502, at *9.

Furthermore, "statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107857 (La. 10/21/03), 857 So.2d 1012, 1021). Due to the penal nature of the action, the Louisiana Supreme Court has held that the bad-faith statute "should be strictly construed." *Baack v. McIntosh*, 2020-01054 (La. 6/30/21), 333 So. 3d 1206, 1217. The Fifth Circuit has also found that this is essentially a factual issue, and "the trial court's finding should not be disturbed on appeal absent manifest error." *First United Pentecostal Church*, 119 F.4th 417 at 427 (citing *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427, 436 (5th Cir. 2014) (internal quotation omitted)).

Based on the evidence provided, Freeman cannot argue against the defendant's assertion that there were reasonable and legitimate questions as to the extent of an insurer's liability. Plaintiff has not distinguished which damages were caused by AVR and which were caused by Hurricane Ida. Further, based on the findings of Ocean Harbor's hired engineer (Rec. Doc. 76-5 at 190- 250) some of plaintiff's alleged Ida damage could arguably be attributed to movement of the foundation, poor drainage, and or long-term expansion and contraction of building materials from thermal and moisture changes in the environment. Rec. Doc. 76-5 at 193. While it is acknowledged that there is a significant damage amount disparity in Ocean Harbors two inspections (*See* Rec. Docs. 76-8 and 79-1), it is reasonable to find that AVR's work could have reasonably caused this disparity. Further, plaintiff asserts that AVR's work has exacerbated her damages by causing her in excess of $130,000 in damages. Rec. Doc. 59 at 9 ¶ 32.

Ocean Harbor acknowledges and does not dispute that its second payment was made beyond the time periods required under Louisiana Law. However, Ocean Harbor shows that the delay was due to AVR's failure to provide the necessary information regarding their work, estimate, and performance on Freeman's home. Rec. Doc. 79-1 at 2. Furthermore, there's support for contending that plaintiff's continued failure to hire a contractor to address relevant questions and concerns also prevented parties from timely agreeing on a scope for the estimated repairs. Rec. Doc. 79 at 6.

Therefore, as there is no evidence to contradict timely and reasonably asserted questions regarding its liability, Ocean Harbor's claim that it acted in good faith remains unrebutted. Thus, as no genuine issue of material fact exists to show Ocean Harbor acted in bad faith, the plaintiff's claims against Ocean Harbor for penalties and attorney fees pursuant to La. R.S. §22:1892 and §22:1973 should be dismissed.

New Orleans, Louisiana, this 27th day of March, 2025

SENIOR UNITED STATES DISTRICT JUDGE