UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLOTTE FREEMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-5546** |
| **OCEAN HARBOR CASUALTY INSURANCE COMPANY** | **SECTION "B"(3)** |

## ORDER AND REASONS

Before the Court are defendant Ocean Harbor Casualty Insurance Company's motion for partial summary judgment on plaintiff's contract claims for personal property, additional living expenses, and recoverable depreciation (Rec. Doc. 75). For reasons previously stated, this Court struck plaintiff Charlotte Freeman's untimely filing from February 19, 2019. Rec. Doc. 85. Charlotte Freeman then filed a motion for reconsideration and for leave to file late [her] opposition to Ocean Harbor's motion for partial summary judgment on March 3, 2025. Rec. Doc. 88. This motion for leave to file was given a submission date of March 19, 2025. *Id.* As of today, defendant has not opposed plaintiff's motion for leave to file. For the following reasons,

**IT IS ORDERED** that Ocean Harbor Casualty Insurance Company's motion for partial summary judgment on plaintiff's contract claims for personal property, additional living expenses, and recoverable depreciation (Rec. Doc. 75) is **GRANTED IN PART,** as to the personal property claims and **DENIED IN PART** as to the claims regarding additional living expenses and recoverable depreciation.

**IT IS FURTHER ORDERED** that plaintiff Charlotte Freeman's motion for reconsideration and for leave to file late opposition to Ocean Harbor's motion for partial summary judgment (Rec. Doc. 88) is **GRANTED**. This Court recognizes that plaintiff's counsel was experiencing a medical issue which prevented him from filing the opposition in a timely manner.

1

*See* Rec. Doc. 88-1. Onward, this Court reminds counsel of his professional obligations to his client, opposing counsel, and the Court, pursuant to the Federal Rules of Civil Procedure's directive "to secure the just, speedy, and inexpensive determination" of this action. FED. R. CIV. P. 1. Trial in this matter is set on April 14, 2025. Rec. Doc. 54. Future lapses and failures by counsel to follow the Court's orders and deadlines, or other sanctionable behavior, will not be treated as favorably. The proposed opposition memorandum (Rec. Doc. 88-4), the proposed exhibits A-H (Rec. Docs. 88-5 through 88-12), and plaintiff's proposed opposition to Statement of Uncontested facts (Rec. Doc. 88-13) shall all be filed into the record of the above-captioned matter, as opposition of and exhibits against defendant's motion (Rec. Doc. 75).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As previously discussed in prior Orders (Rec. Doc. 44), this federal diversity jurisdiction 28 U.S.C. § 1332 claim arises from a dispute between plaintiff Charlotte Freeman against her insurer, defendant Ocean Harbor Casualty Insurance Company, regarding Hurricane Ida damage. After Ocean Harbor's initial coverage determination of $18,382.00, Freeman contracted an independent adjuster, who monetized the damage at $314,668.18. Rec. Doc. 20 at 2–3 ¶¶ 8, 10 (second amended complaint). According to Freeman, "Ocean Harbor received Plaintiff's estimates on or about July 29, 2022, but has made no offer to settle Plaintiff's claim." *Id.* at 3 ¶ 10. Thus, Freeman alleges breach of insurance contract and violations of the duties of good faith and fair dealing against Ocean Harbor. *Id.* at 3–4 ¶¶ 12–15.

With leave of the court, Freeman amended her complaint to add allegations related to her relationship with American Veteran's Restoration ("**AVR**"), which performed mitigation work on her property. *See id.* at 5 ¶¶ 17–19. Due to the allegedly satisfactory proof Ocean Harbor received from AVR, Freeman contends Ocean Harbor is liable "for any indemnity and all amounts that she

2

could or would be found liable unto AVR, including any amounts of an award of damages, interest, penalties, late fees, attorney fees and all other costs of litigation." *Id.* at 5 ¶ 18. According to Freeman, Ocean Harbor "unreasonably withheld an accurate and defensible accounting of the full extent of the damages caused by the storms." *Id.* at 5 ¶ 19.

Ocean Harbor previously moved for summary judgment as to claims related to personal property and contents, additional living expenses, and depreciation recovery. Rec. Doc. 35. This Court denied the defendant's motions without prejudice, allowing it to re-urge its contentions when appropriate. Rec. Doc. 44 at 1. The instant motion (Rec. Doc. 75), again, moves for summary judgment as to claims related to personal property, additional living expenses, and depreciation recovery. Plaintiff opposes. Rec. Doc. 88-4.

**LAW AND ANALYSIS**

    **A.  Motion for Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). However, even if not accompanied by an affidavit, material in support or opposition of a motion for summary judgment may be considered as long as it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

"[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). However, where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment, rather competent evidence, such as affidavits or depositions must be put forth to buttress their claim. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019); *Donaghey v. Ocean Dilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

### B. Unopposed Motion Standard

In the Eastern District of Louisiana, a respondent that opposes a motion, including a motion for summary judgment, "must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." Local Rule 7.5. If a contradictory motion is unopposed, a district court may not grant it automatically, but may grant it if the motion has merit. *See Braly v. Trail*, 254 F.3d 1082, 2001 WL 564155 at *2 (5th Cir. 2001).

Here, the Court set the submission date for defendant's motion for summary judgment (Rec. Doc. 75) as February 19, 2025, setting plaintiff's deadline to oppose as February 11, 2025.

Plaintiff did not oppose timely and the matter was submitted on February 19, 2025. Only on March 3, 2025, did plaintiff file a motion for reconsideration of this Court's February 26, 2025 Order (Rec. Doc. 85) striking plaintiff's untimely February 19, 2025 filing. Because of the plaintiff's lack of due diligence in filing her opposition timely, this Court could have assumed that the plaintiff had no opposition to the motion and reviewed the defendant's request for merit. *Smith v. Larpenter*, No. 16-15778, 2017 WL 2773662, at *1 n.1 (E.D. La. May 3, 2017), *report and recommendation adopted*, No. 16-15778, 2017 WL 2780748 (E.D. La. June 26, 2017). However, due to plaintiff's March 3, 2025 filing (Rec. Doc. 88) and defendant's lack of opposition to said filing, the Court should consider plaintiff's opposition to defendant's instant motion.

### C. Governing Law—Louisiana Substantive Law

The Fifth Circuit has interpreted the United States Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), to "require[] that federal courts apply substantive state law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)). This insurance dispute was removed to federal court on the basis of diversity jurisdiction of 28 U.S.C. § 1332. *See* Rec. Doc. 3 at 4–5. As such, the Court must apply substantive law. *See Cates*, 928 F. 2d at 687. Both parties seemingly concede that Louisiana substantive law should apply in the instant matter. *See* Rec. Docs. 76 and 79. "Interpretation of insurance policy generally involves a question of law that can be resolved by summary judgment." *See Duplessy v. Lexington Ins. Co.*, No. CV 07-8816, 2009 WL 10687547, at *2 (E.D. La. June 17, 2009); *see also La. Ins. Guar. Assoc. v. Interstate Fire &Cas. Co.*.

To determine Louisiana law, courts look to decisions by the Louisiana Supreme Court. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Absent guidance, they must

5

determine "how [the Louisiana Supreme Court] would resolve the issue if presented with the same case." *Id.* To do so, courts "must employ Louisiana's civilian methodology, whereby [they] first examine primary sources of law: the constitution, codes, and statutes." *Id.* Additionally, courts must also consider that in Louisiana's civilian system jurisprudence and existing caselaw are considered a secondary law source, thus not strictly binding on this Court.

### D. Insurance Contract Coverages

"An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256–57 (5th Cir. 2022) (quoting *Supreme Servs. & Spec. Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007). Further, the policy "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Carrier v. Reliance Ins. Co.*, 1999-2573 (La. 4/11/00), 759 So. 2d 37, 43 (quotation and citation omitted). If the insured shows that coverage applies, then the insurer has the burden to prove an exclusion bars coverage. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 359 (5th Cir. 2010) (citing *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 123–24 (La. 2000)).

The instant matter involves a Hurricane Ida homeowners policy coverage dispute. Therefore, the insurance contract coverages are important to understand. Here, Ocean Harbor issued the policy, insuring Freeman's home located at 404 Forest Boulevard in Houma. Rec. Doc. 75-1 at 1. The policy is a "Named Peril Policy, which provides as follows: "We insure for direct physical loss to the property described in Coverages A, B and C caused by any of the following perils unless the loss is excluded under Section I – Exclusions." Rec. Doc. 75-1 at 1; Rec. Doc. 75-3 at 19. The policy provides which perils are covered, including: fire, lightning, windstorm,

hail, explosion, riot, civil commotion, aircraft, vehicles, smoke, vandalism, malicious mischief, theft, falling objects, weight of ice, snow or sleet, accidental discharge of water or steam, overflow of water or steam, sudden and accidental tearing apart, cracking, burning, or bulging, freezing, sudden and accidental damage from artificially generated electrical current, and volcanic eruption. Rec. Doc. 75-3 at 20-21.

The policy excludes, meaning Ocean Harbor does not insure for loss caused directly or indirectly by any of the following: ordinance or law, earth movement, **water damage**, power failure, **neglect**[1], war, nuclear hazard, intentional loss, governmental action. Rec. Doc. 75-3 at 21-22. These exclusions apply whether the loss event is widespread or if any other cause or event contributed concurrently or in any sequence to the loss. Rec. Doc. 75-3 at 21. To clarity, water damage means, "flood, surface water, waves, tidal water, over-flow of a body of water, or spray from any of these, whether or not driven by wind." *Id.* Additionally, water damaged caused by or resulting from human forces are excluded. *Id.*

For coverage under a "named peril" policy, plaintiffs are required to prove by a preponderance of the evidence that their claims of loss or damage are due to a specific covered risk named in the policy. *Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *1 (E.D. La. May 9, 2007). Should the plaintiffs meet this threshold requirement, the burden shifts to the insurer to prove the applicability of any asserted exclusion by a preponderance of the evidence. *Id.* "Any exclusions from coverage in an insurance policy must be clear and [unmistakable]." *Id.* Should the defendant meet this burden, the burden then shifts back to the plaintiff to prove they fall under an exception to the exclusion, by a preponderance of the evidence. *Id.* at *2 (distinguishing from *In re Katrina Canal Breaches Consol. Litig.*, 466 F.Supp.2d 729, 762-63

---

[1] Neglect is defined within the policy as "neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss. Rec. Doc. 75-3 at 21.

(E.D.La. 2006), which upheld as valid and enforceable a water damage exclusion for flooding regardless of the case. However, in this case the issue is the apportionment of damage between those caused by flood and those caused by wind, and not whether the exclusionary clause is valid).

"[U]nder Louisiana law, when both an insured risk and a non-insured risk or excluded risk contributed to the overall damage incurred by the insured property, at the summary judgment stage the insurer that moved for summary judgment bears the burden of producing evidence." *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350 (5th Cir. 2010). To avoid liability, the insurer must make out a prima facie case that the cause of the uncompensated or under-compensated damage was excluded from coverage. *Id.* If the insurer does so, the burden of production shifts to the insured to present evidence demonstrating that there remains a material issue of fact that damages covered by the insurance contract were undercompensated. *Id.*

      **a. Whether plaintiff has established that a covered peril is the cause of damage under to her personal property.**

Nothing bars Freeman from collecting under her policy for insured damages if she can prove the damages occurred from Hurricane Ida. *See Deslonde v. Allstate Ins. Co.*, No. CIV.A. 07-4314, 2008 WL 440417, at *3 (E.D. La. Feb. 13, 2008) (explaining that an insured cannot recover twice for a single loss); *see also Tejedor v. State Farm Fire & Cas. Co.*, No. 05CV679LTS-RHW, 2006 WL 3257526 (S.D. Miss. Nov. 6, 2006) (stating "insurance law is based on principle of indemnification and is aimed at reimbursement. The benefit derived from insurance should be no greater than the loss."). Therefore, when both an insured risk and a non-insured risk contribute to the overall damage, the main issue presented is whether the alleged damage incurred was due to an insured risk (wind) or by a non-insured or excluded risk (alleged negligence of AVR). Here, Ocean Harbor argues that it is entitled to summary judgment because (1) plaintiff cannot establish

that a covered peril is the cause of her damage, (2) plaintiff did not promptly notice her insurer of her claim, and (3) plaintiff has failed to provide an inventory of damaged personal property showing the quantity, description, actual cash value, and amount of loss. Rec. Doc. 75-2 at 7.

Regarding personal property, the Fifth Circuit has stated that the insured must provide an insurer with appropriate documentation that substantiates plaintiff's losses in order to survive a motion for summary judgment. *Williams v. Allstate Indem. Co.*, 359 F.App'x 471, 473-75 (5th Cir. 2009). Ocean Harbor states it has not received from plaintiff an inventory of Hurricane Ida damaged personal property. Rec. Doc. 75-2 at 13. The defendant refers specifically to testimony by Freeman in her deposition where she, on two separate periods of questioning, stated she had yet to provide Ocean Harbor with her claim for personal property damages. Rec. Doc. 75-7 at 8-9, 28. In an affidavit by Charlotte Freeman in opposition to the defendant's instant motion, she claims to have "submitted a contents list to Ocean Harbor as soon as [she] could." Rec. Doc. 88-6 at 2 ¶15. Freeman's opposition narrows the timeline further providing "Ocean Harbor received the personal property list sometime in March or April of 2022 . . . at the latest . . . in May of 2022." Rec. Doc. 88-4 at 4. The question of whether plaintiff provided a detailed inventory of damaged person property showing quantity, description, actual cash value, and amount loss currently remains contested.

Next, regarding the timing of Freeman's notice to Ocean Harbor of her personal property claim, this Court looks to Louisiana contract law. If after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. *See* LA. CIV. CODE ANN. art. 2056 (2024); *see also Advantage Roofing & Constr. of Louisiana, Inc. v. Landmark Am. Ins. Co.*, No. CV 16-677-JWD-RLB, 2018 WL 1955516 (M.D. La. Mar. 13, 2018). Therefore, because

plaintiff's policy states "[i]n case of a loss of covered property . . . give prompt notice to us or our agent," finding that her giving notice of her personal property loss sometime in March, April, or at the latest May of 2022, could be construed as "prompt." This would be a reasonable finding as the parties admit they were still in on-going inspections of the property and discussing supplemental damages until March of 2022. Rec. Doc. 75-1 at 2 ¶4.

Additionally, Ocean Harbor states that plaintiff cannot prove by a preponderance of the evidence that her personal property was lost or damaged due to a covered peril, wind. *See, e.g.*, *Ferguson*, 2007 WL 1378507, at *2-3. Specifically, Ocean Harbor states that "plaintiff did not disclose any experts who will testify that [her] contents and personal property were damaged by an insured peril." Rec. Doc. 75-1 at 3. Finally, defendant asserts that plaintiff's claims of personal property damage were caused by her chosen mitigation contractor, AVR. Rec. Doc. 75-2 at 8.

In response, plaintiff concedes that AVR did damage some of her personal property, however, initially her home was damaged by Hurricane Ida. *See* Rec. Doc. 88-4. Furthermore, AVR's later additional damage does not absolve the defendant of its obligation to indemnify her from the damage to her personal property caused by Hurricane Ida. Rec. Doc. 88-4 at 3. Notably, plaintiff provided one possible source, Charles Norman, through which she could prove her personal property damaged occurred because of the hurricane's destruction. Freeman states Norman will be able to "testify regarding her personal property damage observed during his [February 21, 2024] inspection." Rec. Docs. 88-12, 88-13 at 1 ¶5. Plaintiff offers no other source for this information, instead, Freeman actually limits her evidence regarding this information by stating that Gary Sanders with GLS <u>did not</u> conduct an inspection of her personal property. Rec. Doc. 88-6 at 2 ¶14.

10

Thus, the question here is who has the burden and did Freeman proffer sufficient evidence to support her claim that wind, rather than AVR's negligence, caused her personal property damages. As the Fifth Circuit explained in *Dickerson*, the Louisiana Supreme Court in *Jones* explained that "the insured bears [sic] the burden of proving a policy of insurance affords coverage for an incident, [and] the insurer bears [sic] the burden of proving the applicability of an exclusionary clause within a policy." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290 (5th Cir. 2009) (citing *Jones v. Est. of Santiago*, 2003-1424 (La. 4/14/04), 870 So. 2d 1002). Thus, once Freeman proved she incurred damaged by a named peril, Hurricane Ida wind damage, the burden shifted to Ocean Harbor to prove, by a preponderance of the evidence, that the personal property damages were caused by AVR and thus excluded. As it is undisputed that at least some of Freeman's damages were covered, Ocean Harbor had to prove how much of that damage was caused by AVR, and thus excluded from coverage under its policy. *See Dickerson*, 556 F. 3d 290 at 295; *see also Bayle v. Allstate Ins. Co.*, 615 F.3d 350 (5th Cir. 2010) (stating once the defendant makes a *prima facie* showing the burden shifts to the plaintiff who must produce evidence of a material factual dispute).

Here, Ocean Harbor has the burden of producing evidence in support of the instant motion to establish there is no issue of material fact regarding the cause of the uncompensated or under-compensated damage for which Freeman sought indemnification. To do this, Ocean Harbor points the Freeman's claims against AVR. *See* Rec. Doc. 59. In her complaint, Freeman issues AVR is responsible for $98,082.87 in personal property damages alone. Rec. Doc. 59 at 8 ¶28. Confounding Ocean Harbor's task, however, is the fact that at no point did Freeman actually identify which items were damaged as a result of Hurricane Ida destruction and therefore covered under the policy. Freeman instead states, "[s]ome items were damaged by the hurricane some by

11

AVR and some by both." Rec. Doc. 88-6 at 1¶5. She then states that Charles Norman[2], will also testify regarding personal property damage observed during his 2024 inspection. *Id.*

In contrast, in support of its motion for summary judgment Ocean Harbor provided 1) Freeman's deposition, 2) reports from its initial adjuster taken before AVR's involvement, 3) the subsequent adjuster's report which encompassed the damages after AVR's involvement, and 4) an engineer's assessment which attributes various alleged damages to non-peril related causes. Rec. Docs. 75-4 and 75-5. Furthermore, Ocean Harbor has also provided an assertion by Allen Powers in his second report for Alacrity which states; ""Working with the insured, we do not feel any damaged [to personal effects] items are storm related and only contractor related. The insured is agreeable with this at this time."" Rec. Doc. 75-5 at 17.

Currently, Ocean Harbor has adduced evidence sufficient to establish a prima facie case that a non-peril caused the uncompensated or under-compensated damages to Freeman's personal property. Although question of how the damage occurred is a question of fact for the jury, plaintiff still has the burden to rebut Ocean Harbor's prima facie case that a non-covered peril caused the disputed damages. *See, e.g.*, *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552 (E.D. La. 2010); *Ferguson*, 2007 WL 1378507, at *3. Thus, Freeman is burdened to present evidence demonstrating there remains a material issue of fact as to the issue of whether uncompensated items of damage were caused by the covered peril and not AVR's alleged negligence. *Bayle*, 615 F.3d 350 at 357.

---

[2] Expert disclosures are governed by Federal Rule of Civil Procedure 26. "Plaintiff has not disclosed any experts who will testify that [her] contents and personal property were damaged by an insured peril." Rec. Doc. 75-1. "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . that party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was justified or is harmless." Fed. R. Civ. P. 37(c). The Court's Scheduling Order issued December 27, 2024 as plaintiff's deadline to provide expert reports which "fully set forth all matters about which they will testify." If Charles Norman was only disclosed as an expert witness on January 27, 2025, in plaintiff's witness list filing (Rec. Doc. 71) a Rule 37(c) issue exists here.

At present, Freeman has provided no timely itemized report, affidavit, or other assertions, even by her alleged witness Charles Norman, which conclude that he found that her personal property was damaged by a covered peril alone. *See* Rec. Doc. 88-13 at 1¶5. During today's final pretrial conference, plaintiff's counsel states plaintiff reportedly walked through her home last week while taking a video of her damaged property. Assuming this 2025 video might depict some damage to personal property from back in 2022, it remains dubious at best whether there's reason to admit the late video or that it reasonably depicts the extent or cause(s) of damages. Based upon the present record, parties' argument, and applicable law, and due to the failure of Freeman to proffer something beyond speculation on the instant damage issue, summary judgment is proper.

### b. Whether plaintiff has established that a covered peril rendered her home uninhabitable warranting an additional living expense benefit.

Plaintiff is seeking $52,957.60 in damages for unpaid additional living expenses under Coverage D (Loss of Use) of her policy. Rec. Doc. 88-7 at 2; Rec. Doc. 88-11 at 2. Freeman's policy provision provides:

> Additional Living Expense. If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Rec. Doc. 88-11 at 16.

Further the policy also contained an insured duties after a loss section. If the property were to incur a loss that is covered, but the insured fails to adhere to their duties and that failure prejudices the insurer, the coverage will be lost. Rec. Doc. 88-11 at 22. Some of the insured's duties include:

1. Give prompt notice [of loss] to us or our agent
   [. . . ]
4. Protect the property from further damage. If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses
5. Cooperate with us in the investigation of a claim; and
   [. . .]
6. Send to [Ocean Harbor or their agent], within 60 days after our request, your signed sworn proof of loss which sets forth, to the best of your knowledge and belief:
   [. . .]
   a. Specifications of damaged buildings and detailed repair estimates;
   b. The inventory of damaged personal property [ ];
   c. Receipts for additional living expenses incurred and records that support the fair rental value loss.

Rec. Doc. 88-11 at 22. Louisiana courts usually adhere to provisions such as this one found in Freeman's contract. *See Lee v. United Fire & Cas. Co.*, 607 So. 2d 685, 688 (La Ct. App. 1992). "Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery." *Id.* Nonetheless, Louisiana courts have not made these provisions within insurance contracts "an escape hatch that an insurer may use to flee from liability." *Jackson v. State Farm Fire & Cas. Co.*, No. 06-7202, 2010 WL 724108, at *8 (E.D. La. 2010).

Freeman states that that she "moved out of [her] home due to damage done by both Hurricane Ida and damage from AVR." Rec. Doc. 88-6 at 2 ¶7. She asserts that the "continual water leaking from the roof, other water damage, and mold [ ] eventually began to cause health issues" thereby making her home uninhabitable. Rec. Doc. 88-4 at 5. The water intrusion was in Ms. Freeman's opinion caused by her inability to replace her roof as Ocean Harbor failed to properly pay her claim. *Id.* Furthermore, Freeman states that Ocean Harbor's attempt to blame AVR's work in October of 2021, for making her home uninhabitable is unfounded, as she remained in the home until early 2023.  In fact, Freeman provides that she only began the process of moving out of her home in January of 2023. Rec. Doc. 88-4 at 6. She bolsters her claim of the home being

14

uninhabitable by providing evidence of a mold examination completed in May of 2023 which uncovered dangerous mold growth. *Id.* Thus, because of this mold growth, plaintiff claims she is entitled to additional living expenses despite the delay in her claim.

Ocean Harbor does not argue whether the house is inhabitable or not. *See* Rec. Doc. 75-2. Instead, Ocean Harbor simply provides that any change in the fitness of the plaintiff's home is solely attributed to AVR's work. As damages caused by AVR constitute a non-covered risk, plaintiff's additional living expenses should not be attributed to Ocean Harbor. Rec. Doc. 75-2 at 13-15. Defendant states that their initial inspection of the property supports that there was no evidence that additional living expenses were required. *Id.* at 14. While the initial inspection "revealed water damage to the walls and ceiling of the foyer, sunroom, and exercise room, the extent of damage did not warrant additional living expenses and the Property remained habitable." *Id.* Further, Freeman only reported the need for additional living expenses after AVR's work, a year and several months after the storm. *Id.* To further their argument, Ocean Harbor cites Freeman's own testimony where she testified to living in her property, with others, through January 18, 2023. Rec. Doc. 75-2 at 15.

After reviewing all of the pleadings, it is clear that plaintiff remained living in her home from August 2021 through June of 2023, making little to no repairs to the home during that time. *See* Rec. Doc. 88-2. Further, she remained in the home after the October 2021 mitigation work by AVR. *See* Rec. Doc. 88-2. Freeman only moved out of her home in June 2023, citing safety concerns due to a mold report she received in May as the catalyst. Rec. Doc. Doc. 88-6 at 2 ¶8. However, it is important to note that she started her rental search in January months prior to receiving said mold report. Rec. Doc. 88-4 at 6.

Were the Court to find that her claim for additional living expenses is related to an insured peril, Ocean Harbor claims Freeman forfeited coverage by failing to report her claim within 180 days of the loss. Rec. Doc. 75-3 at 33. Section I - Condition section states, "[I]f the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials . . . this 180-day period does not commence until the state of emergency or disaster has ended and you have access to your property." Rec. Doc. 75-3 at 33. Here, neither party has clearly indicated when the state of emergency ended after Hurricane Ida, however one can assume that it ended prior to June of 2023.

At this time, the record does not conclusively demonstrate that Freeman's home became uninhabitable due to a non-insured peril. While the plaintiff did remain living within said property for many months after Hurricane Ida, she also remained living there several months past AVR's alleged damages. Additionally, despite its assertions, Ocean Harbor has not conclusively shown that it either requested a proof of loss and was denied said information within 60 days, nor has it shown that plaintiff failed to make her claim within six months of the state of emergency ending. Dismissing claims for additional living expenses would be inappropriate currently. There exists a genuine factual dispute as to whether Ocean Harbor breached its obligations by failing to pay additional living expenses.

### c. Whether plaintiff is entitled to depreciation under the policy.

The present motion also addresses depreciation withheld by Ocean Harbor. Currently, Ocean Harbor is asking this Court to rule that the plaintiff has forfeited her claim for depreciation recovery because she has failed to make repairs or request her recoverable depreciation within the 180-day delay period. *See* Rec. Doc. 75-3 at 23. Freeman conversely states she will not be proceeding on an actual cash value basis for this claim but a replacement cost loss settlement

provision of the policy. Rec. Doc. 88-4 at 8. If Freeman were limited to making her claim under an actual cash value basis, she would, by the unambiguous terms of the contract, be unable to recover "recoverable depreciation" withheld by Ocean Harbor. *See* Rec. Doc. 75-3 at 23. This is because she has made no repairs, nor has she notified Ocean Harbor of her requested to recover depreciation in a timely manner, or 180 days after her loss. *Id.*

However, the insurance policy does not state that she is limited to only accepting actual cash value of the damage. *Id.* In fact, the policy under Loss Settlement subsection 2 issues that loss settlements will proceed as follows: "buildings covered under Coverage A [Dwelling] or B [Other Structures] at replacement cost without deduction for depreciation." *Id.* Further, the policy indicates ""[Ocean Harbor] will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a and b. above."" *Id.*

Freeman's home is still currently in the unenviable position of having to be repaired after a catastrophic event. While delayed, her situation is not unique. Ocean Harbor's attempt to prevent her recovery of withheld depreciation is premature. Thus, because there exists a genuine factual dispute as to whether plaintiff may still make a claim under this policy for replacement cost without deduction for depreciation, the granting of summary judgment for Ocean Harbor would be improper.

New Orleans, Louisiana, this 27th day of March, 2025

                                            SENIOR UNITED STATES DISTRICT JUDGE